# SUPREME COURT OF TEXAS.

## AUSTIN TERM, 1884.

ALBERT WEIR ET AL. *v.* FELIX E. SMITH.

(Case No. 4966.)

1. WILL CONSTRUED.— The husband's will bequeathed to the wife all his estate: 1st. "To be kept together during her natural life," to support the children and herself and to educate them, and to be divided, such of it as was "on hand," among the children on their majority or marriage as the wife might think proper. . . . 4th. It provided that the property should be managed as theretofore, and if the wife thought proper to "sell, alien or convey any portion of the same," then the wife and her co-executor named in the will, might do so at such times as she might think proper and advisable. 5th. That the wife at her death might make such final disposition of the property and its increase as she might think proper, and should she fail to make such disposition, then it was to be equally divided among the children. *Held:*

(1) That the wife took under the will but a life estate in the property; citing Philleo *v.* Holliday, 24 Tex., 41; Orr *v.* O'Brien, 55 Tex., 154, and other authorities referred to in the opinion.

(2) When a particular estate is expressly created, with a general power of disposition to the person to whom such estate is given, then the power will not enlarge the estate given.

(3) Any property bought by the executors of the will, or by either of them, with funds belonging to the estate at the time of the testator's death, or with the increase or profits of such estate, became part of the estate, in which the wife had no greater interest or estate than she had existing at the time of her husband's death.

(4) Under the second clause of the will the wife had power to convey to any one of the children on their majority or marriage, such part of the estate as she might think proper, so as not to defeat other provisions of the will.

(5) Under the fifth clause the wife could dispose, *at her death,* in her discretion, of such of the estate as was undisposed of; but this power could only be exercised by her in her will. If she failed to make such disposition by will, then the wish of the testator must be carried out, and what remained be equally divided among the children, even if inequitable apparently in view of unequal advancements which may have been made by the wife to some of the children.

2. WILL CONSTRUED.— Under such a will, land purchased with the funds of the estate, by the one named as co-executor with the wife, who took the deed in his own name, and afterwards conveyed to children of the deceased, became part of the estate, and the title thereto could not be divested out of the estate and vested in particular heirs by such deed of the co-executor, the wife not joining therein.

3. WILL — DEED.— Title to land thus purchased with such estate funds, no matter to whom the deed was made, would pass by a deed from the wife to either of the heirs on their arriving at their majority or marrying.

4. WILL CONSTRUED.— The wife at her death left a will in which she made no reference to the power to her, contained in her husband's will, but devised thereby a part of the property which she had controlled and administered during her life, under her husband's will, as a part of his estate. By her will she sought to vest absolute title to a portion of the property in some heirs and a life estate to one, remainder over to her grand-children. *Held:*

(1) That her will was a valid execution of the power conferred on her by the will of her deceased husband.

(2) All the property of the deceased husband existing at the time of his death and undisposed of by the wife during her life, or by her will, remained for equal distribution among the heirs of the deceased husband.

APPEAL from Travis. Tried below before the Hon. A. S. Walker.

Albert Weir and Louisa Burleson, joined by her husband David C. Burleson, brought suit against Peter Weir, Eliza McLaren Weir, Monterey V. Weir, Felix E. Smith and Fred Carleton, as executors of the last will of Martha J. Weir, deceased, and Joseph, Sarah J., Martha J., Stephen M., Louisa and Elizabeth S. Burleson, and Cornelia A. Cole, wife of J. D. Cole (who was also joined as defendant), for the purpose of declaring null and void the last will and testament of Martha J. Weir, deceased, as a muniment of title to the certain lands described in the petition, and for a partition and distribution of the same among the plaintiffs and defendants as the children and heirs of Adolphus G. Weir, deceased. The wills of both Adolphus G. Weir and Martha J. Weir, his surviving widow, were set out in the petition, and a construction of the same and of the powers conferred thereby were the principal issues in the suit.

Benjamin Weir was the co-executor with his mother named in the will. In addition to what is stated in the opinion, the following allegations of the petition regarding certain property bought with estate funds, and in regard to Mrs. Weir's will, it is deemed proper to insert, though lengthy.

The petition proceeded to allege:

"That said executors on March 27, 1870, for the consideration of $925, paid by them out of funds belonging to said estate, and held by them in their said fiduciary capacity, purchased lot No. 11, in block No. 27, in the city of Austin, and instead of taking the title

thereto in the name of one or both of them in their fiduciary capac-
ity aforesaid, took the same in the name of said Benjamin Weir
individually; that on March 30, 1871, said Benjamin Weir, for the
nominal consideration of $1, but really without any valuable con-
sideration, and as a mere gift, by deed conveyed said lot to the
defendants Eliza M. Weir and Monterey V. Weir, who are now in
possession of and claiming the same under said conveyance; that
said Benjamin Weir took said title in trust for said estate, and that
Eliza M. and Monterey V. Weir now hold the same in trust for said
estate, and the same constitutes a part of said estate.

"That on October 11, 1871, said executors, for the consideration
of $350, paid by them out of the funds belonging to said estate, and
held by them in their said fiduciary capacity, purchased the north
half of lot No. 12, in said block No. 27, in the city of Austin, and
instead of taking title thereto in the name of one or both of them
in their said fiduciary capacity, took the same in the name of said
Benjamin Weir individually; that afterwards, at a date unknown
to plaintiffs, said Benjamin Weir, in some form, but just how they
are not advised, conveyed said half lot to said Martha J. Weir; that
said deed has never been recorded; that said Martha J. Weir, by
deed dated January 20, 1875, without any valuable consideration,
and as a mere gift, conveyed said half lot to said Eliza M. Weir,
who is now in the possession of and claiming the same; that said
Benjamin and Martha J. Weir took said title in trust for said estate,
and that said Eliza M. Weir now holds the same in trust for said
estate, and that the same constitutes a part of said estate.

" That said executors, at some time prior to January 1, 1875, pur-
chased the south half of said lot No. 12, in block No. 27, and paid
for the same out of money which belonged to said estate, and held
by them in their fiduciary capacity aforesaid, and took a convey-
ance therefor, but the same has never been placed on record, and
plaintiffs cannot aver to whom said title was taken, but plaintiffs
say that the same was taken in the name of Benjamin Weir, Martha
J. Weir, Eliza M. Weir, or Monterey V. Weir, or to some com-
bination of two or more of said four persons, and that such per-
son or persons now hold the same in trust as a part of said
estate.

" That said executors, after their appointment as such, exchanged
a tract of four hundred and ninety-two acres of land, a part of the
Wm. Porter survey, in Hays county, and inventoried as a part of
said estate, and which was a part of the property of said estate, for
a tract of four hundred and ninety-two acres, a part of the Varcinas

survey, in Hays county, and that said executors took the conveyance thereof in their said capacity as executors.

. . . "That said Benjamin Weir died intestate in 1874, leaving surviving him neither wife nor children.

"That said Martha J. Weir died July 20, 1882; that said Martha J. never made any partial disposition of any of the property of said Adolphus G. Weir among the children of said testator prior to her death on the arrival of said children at majority, at their marriage, or at any other time, as contemplated by said will; that at her death there remained in her possession real and personal property belonging to the estate of said Adolphus G. Weir, as follows: Five hundred and fifty-three and one-half acres of the Joseph T. Irving one-quarter league, in Travis and Hays counties, valued at $20,000; sixty acres of the S. V. R. Eggleston league, in Travis county, valued at $1,200; four hundred and ninety-two acres of the Varcinas survey, in Hays county, valued at $4,000; one hundred and sixty acres of the M. T. Key survey, in Hays county, value $1,600; one hundred and ten acres of the Eggleston survey, value $1,100; two hundred and ninety acres of the Foote league, Hays county, value $1,450; three hundred and twenty acres, part of James Wells' survey, Hays county, value $1,600; lots 11 and 12, block 27, city of Austin, value $2,000; household furniture of the value of several hundred dollars, and several hundred dollars in money.

"That said Martha J. Weir elected to take and did take a life estate under said will, and took possession and control of said property, and managed and administered the same under said will; that the property held by her as aforesaid at her death consisted of property owned by said Adolphus G. Weir in his life-time, and that acquired afterward by said executors by the use of the money and property belonging to said estate.

"That upon the death of said Martha J. the remainder of the estate of said Adolphus G. Weir, and the increase and profits thereof, became vested in the plaintiffs Albert Weir and Louisa Burleson, and the defendants Eliza M. Weir, Monterey V. Weir and Peter Weir, share and share alike, one-fifth part each of said estate, and that plaintiffs are entitled to have their respective one-fifth interest each set apart and delivered to them.

"That on January 20, 1875, the said Martha J. Weir made or pretended to make a last will and testament, whereby, after appointing the defendants Felix E. Smith and Fred Carleton as her executors, it is claimed and pretended by defendants that she made

a final disposition of the entire estate of said Adolphus G. Weir, except said Austin city lots, as follows: To the said Eliza McLaren Weir she pretended to give one-half of said five hundred and fifty-three and one-half acres of land of the Irving survey; also the undivided half of the sixty acres, Eggleston survey; also an undivided fourth of all the real estate belonging to her and not mentioned in the will; also one-third of all testatrix's personal property, and all money of which she should die possessed. To said Monterey V. Weir one-half of said five hundred and fifty-three and one-half acre tract of land; also the one-half of said sixty acres of the Eggleston tract; also one undivided one-fourth of all the real estate of the testatrix not named in the will, and one-third of personal property, except money. To said Peter Weir an undivided half of said four hundred and ninety-two acres of land of the Varcinas survey; also one-fourth of all other real estate of testatrix not specially mentioned in the will, and also one-third of all personal property. To said Louisa Burleson a life estate in one-half of said four hundred and ninety-two acre tract of land; also one-fourth of all lands owned by said testatrix, not specially mentioned in said will, with remainder to the children of said Louisa. · To the plaintiff, Albert Weir, said testatrix did not devise or pretend to devise any property whatsoever.

"That the will was duly probated and Smith and Carleton had qualified as executors of said will, and had taken into their possession all of said property and estate of said Adolphus G. Weir, except said Austin city lots, and that said executors and said Eliza M. Weir, Monterey V. Weir and Peter Weir are asserting the validity of said will, and claiming and asserting title to the said property under said will; that said Eliza M. and Monterey V. are asserting title in themselves to said Austin city lots under the conveyance made to them by said Martha J. and Benjamin Weir, hereinbefore mentioned; that said defendants are claiming all of the estate of said Adolphus G. Weir, under the said pretended will of Martha J. Weir, except the part thereof in which a life estate is pretended to be devised to the plaintiff Louisa Burleson, and refuse to recognize any right in plaintiffs except as conferred in said pretended will; that defendants deny that plaintiff Albert Weir has any interest in said estate and property, and deny that plaintiff Louisa Burleson has any estate therein except the life estate aforesaid.

"That said pretended will of Martha J. is null and void as a conveyance or muniment of title to any part of the estate of Adolphus G. Weir, and especially as to any part of said estate not specially named in the will of said Martha J.; that plaintiffs have received n ɔ

property by virtue of said will of Martha J.; that the plaintiff Louisa Burleson expressly renounces and disclaims all right and interest under said will.

"That said Martha J. had no power to dispose of the property mentioned in said will by last will and testament; that said Martha J. was not the owner in fee of said real estate, nor the absolute owner of said personal property; that she had only an estate for life therein; that all the property attempted to be disposed of by said will belonged to the children of Adolphus G. Weir, aforesaid, subject to the life estate of said Martha J.; that said Martha J. did not own any real or personal property which she could dispose of by will, either at the date of said will or at the date of her death; that all of her power and authority to dispose of said property was derived from the will of Adolphus G. Weir; that said will of Adolphus G. did not empower her to dispose of said estate by will, and especially by will made more than seven years before her death; that said Martha J. had no power to disinherit the plaintiff Albert Weir of his said one-fifth interest in said estate; that said Martha J. had no power to limit the estate of the plaintiff Louisa Burleson to a life estate, with remainder over to her children; that said Martha J. has not executed the powers conferred on her by said will in the manner intended by said Adolphus G.; that said Martha J., in making disposition of said property, did not pretend to act under the powers in the will of said Adolphus G. as executrix or trustee, or otherwise; that said will of Martha J. only purports to convey, and did in fact only convey, her own title; that she had no title for said will to operate upon; that such disposition by her is in disregard of the plain interpretation of the will of said Adolphus G.; that she attempts to dispose of said estate as her own property; that she makes no reference to the will of said Adolphus G., under which alone she could act; that she makes special mention of only a part of the property belonging to said estate; that she had power only to make a fair and equitable division of said property.

"That the estate of Adolphus G. Weir at the date of the death of said Martha J. was reasonably worth $35,000, all of which she attempted to dispose of in her own name and in her own right; that said Eliza M. and Monterey V. will receive property to the value of $13,500; the said Peter Weir property of the value of $4,000, and the plaintiff Louisa Burleson a life estate in property of the value of $4,000, and said Albert Weir shall receive nothing, all of which is in plain violation of the terms, spirit, intent and effect of the will of said Adolphus G.

"And plaintiffs pray that the will of said Martha J. be declared

void, and that the estate of said Adolphus G. be partitioned among his heirs, and for judgment against defendants in favor of plaintiffs for one-fifth interest each in said estate."

The defendants filed a general demurrer. The court sustained the demurrer and dismissed the petition.

*Sheeks & Sneed*, *Walton & Hill* and *Robertson & Williams*, for appellants, cited, on the proposition that the petition stated a cause of action good on general demurrer: Philleo *v.* Holliday, 24 Tex., 41; Bell County *v.* Alexander, 22 Tex., 357; Tendick *v.* Evetts, 38 Tex., 278; Paul *v.* Ball, 31 Tex., 12; Brooks *v.* Evetts, 33 Tex., 741; Dial *v.* Dial, 21 Tex., 532; Danish *v.* Disbrow, 51 Tex., 239; Mc-Donough *v.* Cross, 40 Tex., 277; Clifft *v.* Wade, 51 Tex., 21; Orr *v.* O'Brien, 55 Tex., 154; Howze *v.* Howze, 19 Tex., 554; Wimberly *v.* Bailey, 58 Tex., 225; Blanton *v.* Mayes, 58 Tex., 428; Newman *v.* Dodson, 1 Tex. L. Rep., 397; Speairs *v.* Ligon, 1 Tex. L. Rep., 960; Burleigh *v.* Clough, 52 N. H., 267; Dunning *v.* Van Dusen, 47 Ind., 423; Eaton *v.* Straw, 18 N. H., 331; Burwell's Ex'rs *v.* Anderson, Adm'r, 3 Leigh (Va.), 348; Denson *v.* Mitchell, 26 Ala., 360; French *v.* Hatch, 28 N. H., 350; Jackson *v.* Robbins, 16 Johns., 558; Smith *v.* Bell, 6 Pet., 68; Blagge *v.* Miles, 1 Story, 426; Henderson *v.* Vaulx, 10 Yerg., 30; Jones *v.* Wood, 16 Pa. St., 25; Funk *v.* Eggleston (Sup. Ct. Ill.), 8 Cent. L. J., 169; Brant *v.* Va. C. & I. Co., 93 U. S., 326; 1 Jarman on Wills, 628 and notes; 2 Jarman on Wills, 171; 4 Kent's Com., 319, 334, 335, 520, 521; 1 Sugden on Powers, 334; 2 Washb. R. P., 371.

That Mrs. Weir had no power, under her husband's will, to create by will a life estate, with remainder over, they cited: Dunning *v.* Van Dusen, 47 Ind., 423; Burleigh *v.* Clough, 52 N. H., 267; Bingham's Appeal, 64 Penn. St., 349.

*Hancock & Shelley*, for appellees, contended that Adolphus Weir's will conferred on the wife the absolute power of disposition, without limitation, citing: Gifford *v.* Choate, 100 Mass., 346; Ide *v.* Ide, 5 id., 500; Speairs *v.* Ligon, 59 Tex., 233; Williams *v.* Worthington, 33 Am. Rep., 288; Dunning *v.* Van Dusen, 47 Ind., 427; McKenzie's Appeal, 41 Conn., 607.

STAYTON, ASSOCIATE JUSTICE.—The rights of the parties plaintiff and defendant depend on the true construction to be placed on the will of Adolphus G. Weir, and upon the will of his wife, Martha J. Weir, subsequently executed.

The wife, Martha J. Weir, and Benjamin Weir, a son, were, by the will of Adolphus G. Weir, appointed the executors of his will, without the control of the probate court, and they so qualified.

The parts of his will which bear on the questions at issue between the parties are the following:

"*Second.* I will and bequeath unto my beloved wife, Martha Jane Weir, all my property, both real and personal, of every character and description, to be by her kept together during her natural life for the support of herself and the support of her and my children, and the maintenance and education of such of them as have not completed their education; each of said children, on his or her arriving of age or marrying, to receive such amount of my said property, or that may then be on hand, as my said wife may, in her discretion, think proper to give him or her.

"*Third.* I leave to my said wife's discretion and judgment the education to be given our said younger children, feeling confident that it will be as liberal and thorough as may be practicable.

"*Fourth.* It is my will and desire that all my said property shall be managed and controlled as it has heretofore been by myself and my said wife as near as may be. And if my said wife should deem it advisable to sell, alien and convey any portion of the same, it is my will and desire that she, with my executor to be hereinafter named, shall do so at such time or times as she may deem proper and advisable.

"*Fifth.* It is my will and desire that my said wife, at the time of her death, shall make such final disposition of such of my said property, as also the increase and profits arising from the same, as there may then be, as she in her discretion may think proper and right. But in the event of her failing to dispose of the same or any part thereof, then it is my will that all my property of every character so remaining undisposed of, shall be divided equally between all my children then living or their descendants, share and share alike, between my said children and the descendants that portion which their ancestor, if living, would have been entitled to."

It is evident from the second clause in the will that the testator only intended by the will to vest an estate for life in his wife in all of his property, real and personal.

If the clause of the will referred to left this matter uncertain, the subsequent clauses of the will place it beyond controversy.

The fourth clause directs how it shall be managed, which is inconsistent with the idea that the testator intended by the will to vest in the wife an estate in fee; but is consistent with his intention,

expressed in other parts of the will, to vest even the life estate in the wife charged with named trusts, and with a view to making the increase and profits to be realized from the estate, except in so far as it might be necessary to use it for the purpose of carrying out the purposes for which the life estate was created, a part of the remainder to be disposed of in accordance with the will.

It also withholds from the wife any power to sell, alien or convey any portion of the estate, except such as she could convey under the second clause, but gives this power to her and to her co-executor, to be exercised by them at such time or times as she may deem advisable; the terms upon which such conveyance, however, could be made would have to be fixed by the two executors. This is also inconsistent with the intention of the testator to give to his wife an estate in fee.

The fifth clause directs how the estate in existence at the time of the death of the wife shall be disposed of, and expressly makes the increase and profits, not used for the purposes named in the will, a part of the remainder. That provision is utterly at war with any intention to vest in the wife other than a life estate, charged with trusts in favor of the children, and, of the remainder, a qualified life estate.

This clause provides, also, how the remainder shall be disposed of, in case the wife fails to exercise the power conferred upon her by this and the second clause of the will.

This is also inconsistent with an intention by the testator to create in the wife any estate greater than an estate for life.

As to the true construction of the will, in respect to the estate thereby conveyed to the wife, the following authorities may be profitably consulted: Philleo v. Holliday, 24 Tex., 41; Orr v. O'Brien, 55 Tex., 154; Wimberly v. Bailey, 58 Tex., 225; Burleigh v. Clough, 52 N. H., 267; Dunning v. Vandusen, 47 Ind., 423; Denson v. Mitchell, 26 Ala., 361; Henderson v. Vaulx, 10 Yerg., 30; Brant v. Virginia, C. & I. Co., 93 U. S., 327; Funk v. Eggleston, 92 Ill., 515; 2 Washburn on Real Prop., 670.

The general rule is, that if a particular estate is expressly created, with a general power of disposition to the person to whom such estate is given, then the power will not enlarge the estate given.

Under the averments of the petition, the property disposed of by the will must be considered to have been the separate estate of the testator.

It must be held, also, that any property bought by the executors of the will, or by either of them, with funds belonging to the estate

at the time of the death of the testator, or with the increase or profits of such estate, became a part of the estate of the testator, in which the wife had no other or greater interest or estate than had she in the estate existing at the time of her husband's death.

The next question which arises is: What power did the wife take under the will of her husband?

Under the second clause of the will, she evidently had power to convey to any one or more of the children, becoming of age or marrying, such portion of the estate on hand, at such time as, in her discretion, might seem proper; the wife's discretion, however, in this respect, could not have been so exercised as to defeat some of the main purposes for which the estate for life was given to her. The mode of the exercise of the power conferred by this clause would evidently be such as under the law would be appropriate to the conveyance of such property as might be so conveyed, if made by one not acting under a power, except in so far as it might be necessary by the conveyance to evidence the fact that it was intended thereby to execute the power.

The fifth clause of the will gave to the wife the power, at the time of her death, to make a final disposition of such parts of the original estate, and of the increase and profits arising therefrom, as might then be undisposed of, as she, in her discretion, might think proper and right.

This gave to the wife a very broad power, a power subject alone to her own discretion, through which she might pretermit some of the children.

This power, as it could only be exercised "at the time of her death," it would seem, in the nature of things, could only be executed by her will.

If the wife failed to execute this power, or executed it only as to a part of the estate, then the will provided, in case of an entire failure to execute the power, that all property belonging to the estate of every character, undisposed of, should be equally divided between all of the testator's children "then living, or their descendants, share and share alike between my said children, and the descendants, that portion which their ancestor would have been entitled to."

The fifth clause, it will be observed, provides for the same proportionate distribution in case of a partial failure of the wife to dispose of the estate as in case of an entire failure.

If there was an entire failure to dispose of the estate, each of the five children would receive one-fifth of the estate under the will; if there was a partial disposition of the estate by the wife, under the

powers conferred on her by the second and fifth clauses of the will, then each of the five children would be entitled to only one-fifth of the estate undisposed of, and this, even though under the partial disposition made by the wife some of the children may have received property and others none.

This seems to us inequitable, and but for the language of the will, those who have received in the partial disposition of the property ought to be compelled to account for that received by them, so that all could be made equal through the final distribution. This, however, was a matter for the determination of the testator, whose will, when clearly evidenced, must control in the disposition of that estate which the law permits him to dispose of by his will.

The power given to the two executors, by the fourth clause of the will, it is now unnecessary particularly to consider.

The next inquiry is: How far did Mrs. Weir execute through her will, or through conveyances which she may have made under the second clause of her husband's will, the powers conferred on her by that will?

If the executors purchased lot No. 11, block 27, in the city of Austin, with funds belonging to the estate of Adolphus Weir, as part of the estate at the time of his death, or the increase or profits of it afterwards, then the lot became a part of the estate, it matters not in whose name the title was taken; and the title of the estate thereto could not be divested, and title vested in Eliza M. Weir and Monterey V. Weir, unless the same was done by a deed made to them by Martha J. Weir evidencing her will and discretion so to convey to them upon their arriving at age or marrying, in accordance with and in execution of the power conferred on her by the second clause of her husband's will.

The petition alleges that the lot was bought with the funds of Adolphus Weir's estate, and that the title thereto was taken in the name of Benjamin Weir, who subsequently conveyed it to Eliza M. and Monterey V. Weir, two of the children, without being joined by his mother. No power whatever, nor discretion, was confided to Benjamin Weir by his father's will under the second and fifth clauses. These clauses gave to Martha J. Weir powers which none other than she could execute, and an attempt to execute similar power by Benjamin, although a co-executor with his mother, would be ineffective.

Under the fourth clause of the will of Adolphus Weir, Benjamin, *joined by his mother, was given power to sell, alien and convey* property belonging to the estate, but whether property should be so dis-

posed of, even under this clause, was left solely to the discretion of the mother. This clause, however, can have no reference to the distribution of property among the children, for that is provided for by the second and fifth clauses.

The conveyance of the lot by Benjamin was not in the exercise of power given by any clause of his father's will, if the averments of the petition are true; hence, such conveyance passed no title. The facts stated in the petition, in reference to the north half of lot No. 12, block 27, in the city of Austin, would show a valid execution of the power conferred on Martha J. Weir by the second clause of her husband's will, if the conveyance was made to Eliza M. Weir upon her arriving of age or marrying.

It is evident from the statements of the petition that the facts in relation to the south half of lot 12, block 27, are not accurately known, but sufficient has been said in reference to lot 11 and north half of lot 12, in block 27, to indicate the law applicable to the facts likely to arise in regard to the south half.

We will say, however, that if the half lot was bought with the funds of the estate, then it became the property of the estate, in the names of whomsoever the title may have been taken, and that it is still a part of the estate of Adolphus Weir, unless it has been conveyed by Martha J. Weir in execution of the power conferred on her by the second clause in her husband's will, or by herself and Benjamin under the power conferred on them by the fourth clause of the will.

The next inquiry which arises is: How far, if at all, did Martha J. Weir execute by the will which she made the powers conferred on her by the will of her husband?

So much of her will as bears on this question is as follows:

"*Second.* I do hereby give, devise and bequeath to my beloved daughter, Eliza McLaren Weir, one undivided one-half of two certain tracts of land, described as follows: First, that certain tract of land situated on the line of Travis and Hays counties, in the state aforesaid, being the same tract occupied by me and my late husband, A. G. Weir, and known as the Manchaca place, being a survey of five hundred and fifty-three and one-half acres for W. D. Miller, situated on Onion creek, being the south half of one-quarter league No. 1, granted to Josephus T. Irving. (Field notes omitted.) Second, a parcel of land situated on Onion creek, in the counties of Hays and Travis, in the state aforesaid, being a part of that portion of S. V. R. Eggleston league, . . . and containing sixty acres of land, more or less. (Field notes omitted.)

" *Third.* I do give, devise and bequeath to my beloved daughter, Monterey Virginia Weir, the remaining undivided one-half of the two tracts of land described in the second provision of this will.

" *Fourth.* I do give, devise and bequeath to my beloved son, Peter Weir, one equal undivided one-half of all that certain tract of land lying and being situated in the county of Hays and state of Texas, bounded and described as follows: (Then follow the field notes and description of four hundred and ninety-two acres of the Trinidad Varcinas survey, which are omitted.)

" *Fifth.* I do give, devise and bequeath to my beloved daughter, Louisa Burleson, formerly Weir, for the term of her natural life, with remainder over to her children, the remaining undivided one-half interest in the tract of land described in the fourth provision of this will.

" *Sixth.* I do give, devise and bequeath to each one of my three children, Peter Weir, Eliza McLaren Weir, and Monterey Virginia Weir, one-fourth of all the real estate belonging to me and not heretofore devised to any, that is to say: that each one of the three devisees last hereinbefore named shall each receive one undivided one-fourth of said real estate not heretofore described.

" *Seventh.* I do give, devise and bequeath unto my beloved daughter, Louisa Burleson, formerly Weir, for the term of her natural life, with remainder over to her children, the remaining one undivided one-fourth of the real estate described in provision sixth of this will.

" *Eighth.* I do give and bequeath unto my beloved children, Peter Weir, Eliza McLaren Weir, and Monterey Virginia Weir, share and share alike, all my household and kitchen furniture and personal property of every kind whatever, saving and excepting only money.

" *Ninth.* I do give and bequeath to my beloved daughter, Eliza McLaren Weir, all money of which I may die possessed."

The rule in reference to the execution of powers either by deed or will, and of construction, are so clearly stated by Chancellor Kent that we cannot do better than to state it in his language: " The general rule of construction, both as to deeds and wills, is, that if there be an interest and a power existing together in the same person, over the same subject, and an act be done without a particular reference to the power, it will be applied to the interest, and not to the power. If there be any legal interest on which the deed can attach, it will not execute the power. If an act will work two ways, the one by an interest and the other by a power, and the act be indifferent, the law will attribute it to the interest, and not to the authority, for *fictio cedit veritati.*

"In Sloan v. Cadogan, it was declared by the master of the rolls, after a full discussion, to be settled, that a general disposition by will would not include property over which the party had only a power, unless an intention to execute the power could be inferred. A will need not contain express evidence of an intention to execute a power. If the will be made without any reference to the power, it operates as an appointment under the power, provided it cannot have operation without the power. The intent must be so clear that no other reasonable intent can be imputed to the will; and if the will does not refer to a power, or the subject of it, and if the words of the will may be satisfied without supposing an intention to execute the power, then, unless the intent to execute the power be clearly expressed, it is no execution of it." 4 Kent, 335.

The rule thus stated is well sustained. Burleigh v. Clough, 52 N. H., 267; Dunning v. Vandusen, 47 Ind., 423; Eaton v. Straw, 18 N. H., 320; Denson v. Mitchell, 26 Ala., 361; French v. Hatch, 8 Foster, 331; Blagge v. Miles, 1 Story, 445; Jones v. Wood, 16 Penn., 25; Funk v. Eggleston, 92 Ill., 515; Jarman on Wills, 628, and cases cited; Sugden on Powers, 232, 364, 421–424; Bingham's Appeal, 64 Penn. St., 345; Tiedman on Real Prop., 563–569.

As before said, under the averments of the petition no presumption can be indulged that Mrs. Weir had any interest whatever in the property referred to in the will of her husband, except such as she took under that will.

The property named in the second, third, fourth and fifth clauses of her will is alleged to have belonged to Adolphus Weir at the time of his death.

This being true, Mrs. Weir could have no interest which could pass by the will; for her life estate ended at the same time the will took effect; and as to the property named in the clauses of her will referred to, the will would be inoperative, unless in execution of the power conferred on her by her husband's will.

While her will does not refer to the power given by her husband's will, it does apply to that which is made subject to that power, through which alone, she having no interest, the will made by her could operate. There is nothing in the clauses of her will referred to, which bears evidence that she supposed she had an interest in the lands devised, and we are of the opinion that those clauses operate a valid execution of the power given to Mrs. Weir by the fifth clause of her husband's will.

The power given to her by that clause is very broad, and under it she might do what her husband could have done directly by his own will. He might have so given to Mrs. Burleson only an estate

for life in the property which by the fifth clause of the will of Mrs. Weir is so devised to her, with remainder to her children. The like devise by Mrs. Weir in the execution of the power must be held valid.

The sixth, seventh, eighth and ninth clauses of Mrs. Weir's will, however, do not refer to the will of her husband as the source of the power which through her will she exercises, nor do they refer to anything which is made subject to that power; on the contrary, they exclude the idea that she intended thereby to execute a power given by the will of her husband to dispose of property belonging to his estate, in that therein she disposes of lands and personal property to which she asserted title in herself. This is inconsistent with her intention, through the clauses of her will referred to, to execute the power given to her by the will of her husband. If she had named, in these clauses, property embraced in the will of her husband, then the question would arise, whether her disposing of the property as her own would rebut the presumption of her intention to execute the power given by her husband.

No such case, however, is presented; no property shown to belong to her husband's estate is named in these clauses, and through them she professes to dispose of her own property, and no presumption arises from anything alleged in the petition that she intended to execute the power given by her husband's will.

From this it follows that the will of Mrs. Weir did not dispose of any of the property of her husband's estate except that which is named in second, third, fourth and fifth clauses of her will; and that all of the property of his estate, existing at the time of the death of his wife, undisposed of, remains for equal distribution between the children in accordance with the fifth clause of his will.

No inquiry arises, as the case is presented, whether evidence *dehors* the will might be introduced to show the intention of Mrs. Weir, by the clauses of her will under consideration, fully to execute the power given by her husband's will.

For the error of the court in sustaining the demurrer to the petition, the judgment of the court below is reversed, and the cause remanded.

REVERSED AND REMANDED.

[Opinion delivered June 3, 1884.]

Associate Justice WEST not sitting.